JOSEPH HENSLER BREWING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11874. Promulgated May 21, 1928.

*John A. Conlin, C. P. A.,* for the petitioner.
*LeRoy L. Hight, Esq.,* for the respondent.

26

28

## OPINION.

SIEFKIN: In its pleading the petitioner raised the question as to the propriety of the respondent's reducing invested capital of the petitioner during 1919, by deducting a pro rata tax for 1918. This action by the respondent must be upheld. See *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

The petitioner also assigned as error the respondent's failure to allow obsolescence of good will due to prohibition legislation but at the trial this contention was abandoned and no evidence was submitted in this regard due to precedents established by the Board. *Manhattan Brewing Co.*, 6 B. T. A. 952.

The remaining question to be decided is whether the petitioner is entitled to deductions from income in 1919 on account of obsolescence due to prohibition legislation, of plant, fixtures, equipment and cooperage.

Section 234 (a) of the Revenue Act of 1918 provides:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \* \*

(7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.

On October 30, 1918, the board of directors of the petitioner adopted a resolution authorizing the abandonment of such portions of plant and equipment as, in the opinion of the general superintendent, was necessary due to the advent of prohibition. Adjustment incidental thereto was also authorized. It was testified that the directors in 1919, by observation of the experience of other brewers in States which had adopted prohibition, knew that parts of their plant would become valueless.

On December 18, 1917, Congress passed a resolution submitting the prohibition constitutional amendment to the States. By January 15, 1919, the requisite number of States to make prohibition the law of the land had acted, and national prohibition was to become effective January 16, 1920. In the meantime war-time prohibition was in effect. On November 21, 1918, the manufacture of beer was prohibited and the sale thereof prohibited after June 30, 1919, except for export.

Prior to 1919, the petitioner had in use 201 steel and wooden casks and tanks. Since 1919 only 26 of these have been in use. The remainder have either been torn down or are standing idle and were of no value to the petitioner after 1919. The depreciated cost of all casks and tanks as evidenced by the books of the petitioner as of December 31, 1919, was $41,642.58. No evidence is submitted to show what proportion of the total value of all the tanks was represented by those retained by the petitioner.

It is not shown that each of the 201 casks and tanks was of equal value and we can not assume that such was the case. We must, therefore, approve the action of the respondent in disallowing a deduction for obsolescence of casks and tanks.

Before prohibition the petitioner had on hand 16,000 half-barrels. Afterwards only 2,000 of these were necessary for use in the near-beer business and the other 14,000 were left on a lot in the weather. They were of no further value to the petitioner. The book records as at December 31, 1919, showed that all cooperage had a value of $28,-342.32. The evidence shows that during 1919, sales of cooperage in small lots were made to individuals. This indicates that the cooperage had some salvage value. The burden of proving this value is upon the petitioner, and it having failed to submit such proof, we have no basis upon which to determine obsolescence. Nor does it appear that the petitioner, in its calculations, has taken into consideration the sales referred to. We must hold that no deduction for obsolescence of cooperage should be allowed.

The petitioner, prior to prohibition, had in use three refrigerating machines but after the manufacture of beer was discontinued only

one was used. It was shown that the two abandoned machines were of an obsolete type and had no salvage value. They were of no further value to the petitioner, or to anyone else and the depreciated book value, $8,325, should be allowed as obsolescence and the obsolescence period, December 18, 1917, to January 16, 1920, should be used as the basis of determining the obsolescence for 1919.

After prohibition the petitioner abandoned its building designated #9, which had been used as a refrigerated storeroom for beer.

The first floor of this building is three feet below the surface of the ground, the floor levels are of different heights, it has a fore-cellar, has small windows, and the only access to the third floor is by a stairway. This building is located in the center of the petitioner's property and the only access to it is through the petitioner's private yard. It contains steel and wooden tanks, the removal of which would necessitate tearing away part of the building. This building was completely abandoned by the petitioner in 1919, and thereafter had no market or salvage value. We, therefore, hold that obsolescence should be allowed to the extent of $14,916.22, its depreciated book value as of December 31, 1919.

Before prohibition the petitioner had followed the policy of placing fixtures in saloons to be used as long as the owner of the saloon retailed the petitioner's product. In 1919 fixtures had been placed in about 225 saloons. In October of 1919, after the petitioner had ceased manufacturing beer, the vice president of the petitioner made an inspection of each of the places containing these fixtures. Some of the places were closed but some of them continued in business, retailing the near beer of the petitioner. This witness estimated that a value of 15 per cent of the depreciated cost of all such fixtures represented the value to the petitioner of the fixtures while in use, retailing the near beer. The value was placed upon all of the fixtures despite the fact that some of them were not in use, as it was expected that other persons would take the places of those who had gone out of business. This witness testified that it would have cost more than the fixtures were worth to have removed them for salvage purposes. We do not believe that such estimate is sufficiently grounded, covering as it does fixtures in different stages of use and nonuse, to permit us to say with anything approaching certainty that 15 per cent of the depreciated cost represented the value of the fixtures in October, 1919. We therefore hold that no deduction on account of obsolescence of such property can be allowed.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*

TRAMMELL dissents.